UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DYCOM INDUSTRIES, INC.,

                          Plaintiff,

-v-

PENSION, HOSPITALIZATION & BENEFIT PLAN OF THE ELECTRICAL INDUSTRY,

                          Defendant.

22 Civ. 3303 (PAE) (SDA)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

    Plaintiff Dycom Industries, Inc. ("Dycom") brings this action against the Pension, Hospitalization & Benefit Plan of the Electrical Industry (the "Fund"), seeking to vacate a March 23, 2022 arbitral award. *See* Dkt. 1-1 (the "Award"). Dycom wholly owned Midtown Express, LLC, formerly known as Midtown Express, Inc. ("Midtown"), a wiring installation contractor, that eventually dissolved. When it existed, Midtown was obligated, under union agreements, to contribute to the Fund, a multiemployer pension plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, amended by the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1461. Upon its dissolution, Midtown stopped contributing. On October 4, 2016, the Fund assessed Midtown and Dycom withdrawal liability. Thereafter, Dycom demanded arbitration challenging that assessment. It argued that, under the building and construction industry exemption (the

"Construction Exemption") under ERISA § 4203(b), 29 U.S.C. § 1383(b),[1] Midtown had not withdrawn from the Fund. On March 23, 2022, the arbitrator issued the Award in favor of the Fund. Chronicling and analyzing the different categories of tasks performed by contractor Midtown, the arbitrator concluded that "[t]he work performed by [Midtown] . . . did not qualify for the 'Building and Construction Industry' exemption from ERISA withdrawal liability." Award at 31.

This case was originally assigned to Judge Gregory H. Woods, who, on April 26, 2022, referred this case to the Hon. Stewart D. Aaron, Magistrate Judge, for general pretrial management and all dispositive motions. Dkt. 5. On September 13, 2022, this case was reassigned to this Court. *See* Dkt. 21.

On September 30, 2022, Dycom moved to vacate the Award. Dkts. 23–24; *see* Dkts. 25–26 (re-filed). On October 7, 2022, the Fund moved to confirm the Award. Dkts. 28, 30–31. On October 28, 2022, Dycom opposed the motion to confirm, Dkt. 32, and the Fund opposed the motion to vacate, Dkts. 33–34. On December 2, 2022, Dycom replied in support of its motion to vacate, Dkts. 37–38, and the Fund replied in support of its motion to confirm, Dkts. 35–36.

On December 27, 2022, Judge Aaron issued a Report and Recommendation. Dkt. 39 (the "Report"). It recommends that the Court confirm the Award. *Id.* at 12. The arbitrator, the Report concludes, was correct in holding that the work performed by Midtown did not qualify for the Construction Exemption, in that Midtown's workers—"warehousemen, dispatchers[,] . . . data entry employees," and "installers (also referred to as technicians)"—"were not engaged in

---

[1] Under ERISA § 4203(b), 29 U.S.C. § 1383(b), an employer who contributes to a multiemployer pension plan that primarily covers employees in the building and construction industry on behalf of its employees—substantially all of whom work in the building and construction industry—who then stops such contributions when it closes its business operations and does not reopen in the same jurisdiction for at least five years, does not owe withdrawal liability.

2

the building and construction industry." *Id.* at 10. Specifically, the Report concludes, "drilling holes and running cable through existing buildings or structures, and then using material and parts to hook up the cable to the necessary equipment in order to provide cable, television, Wi-Fi and home security services is not within the ambit of work performed in the 'building and construction industry' under 29 U.S.C. § 1383.6." *Id.* (internal citation omitted). The Report also reviews three misstatements of fact that Dycom asserts the arbitrator made in its reasoning in the Award, but finds that these did not "alter the outcome." *Id.* at 11–12. The Report concludes that "[b]ecause the Award is legally sound, and because [Dycom] has not rebutted by a clear preponderance of the evidence any of Arbitrator Grossman's factual findings, the Award should be confirmed." *Id.* at 12.

On January 11, 2023, Dycom filed objections to the Report. Dkt. 40-1 ("Obj.").[2] On January 25, 2023, the Fund replied to these objections. Dkt. 42.

For the following reasons, the Court adopts the Report in its entirety.

## DISCUSSION

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are timely made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). "To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Ruiz v.*

---

[2] The Court agreed to consider Dycom's objections, which were untimely by one day, with consent from the Fund. *See* Dkt. 40.

3

*Citibank, N.A.*, No. 10 Civ. 5950 (KPF) (RLE), 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)); *see also, e.g.*, *Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

If a party objecting to a Report and Recommendation makes only conclusory or general objections, or simply reiterates its original arguments, the Court will review the Report strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH) (GWG), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012). This is so even in the case of a *pro se* plaintiff. *Telfair v. Le Pain Quotidien U.S.*, No. 16 Civ. 5424 (PAE), 2017 WL 1405754, at *1 (S.D.N.Y. Apr. 18, 2017) (citing *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)). Furthermore, "[c]ourts do not generally consider new evidence raised in objections to a magistrate judge's report and recommendation." *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011) (collecting cases).

Dycom raises two objections. The Court addresses these in turn, keeping in mind the particular standards of review associated with motions to vacate or confirm an arbitration award under 29 U.S.C. § 1401(b), as the parties here seek.

In most arbitration-review contexts, district courts owe "strong deference" to "arbitral awards and the arbitral process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). An arbitral award may be vacated only if it exhibits a "manifest disregard of the law." *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir. 1997). "[T]his standard requires more than a mistake of law or a clear error in fact finding." *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002); *see Merrill Lynch, Pierce, Fenner*

& *Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986) (petitioner must do more than show "that the [arbitrator] committed an error—or even a serious error").

Review under the MPPAA, *see* 29 U.S.C. § 1401(b), however, is less deferential to the arbitrator's conclusions. The MPPAA provides that in reviewing the decision of an arbitrator, "there shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct." *Id.* § 1401(c); *see also Nat'l Ret. Fund On Behalf of Legacy Plan of Nat'l Ret. Fund v. Metz Culinary Mgmt., Inc.*, 946 F.3d 146, 149 (2d Cir. 2020) (citing 29 U.S.C. § 1401(c)), *cert. denied*, 141 S. Ct. 246 (2020). By contrast, the standard of review for decisions of an arbitrator on matters of law in an MPPAA withdrawal dispute is *de novo*. *HOP Energy, LLC v. Local 553 Pension Fund*, 678 F.3d 158, 160 (2d Cir. 2012) (applying *de novo* standard to review of contract interpretation to determine whether withdrawal liability exemption applies); *see 666 Drug, Inc. v. Tr. of 1199 SEIU Health Care Emps. Pension Fund*, No. 12 Civ. 1251 (PAE), 2013 WL 4042614, at *4 (S.D.N.Y. Aug. 8, 2013), *aff'd*, 571 F. App'x 51 (2d Cir. 2014) (same); *accord Bowers v. Andrew Weir Shipping, Ltd.*, 27 F.3d 800, 804 (2d Cir. 1994) (assuming without deciding that *de novo* standard applies).

Dycom's two principal objections are directed towards legal conclusions. The Court thus reviews these legal conclusions *de novo*.

*First*, Dycom objects that the Report is internally "inconsistent." As Dycom notes, the Report finds that "the definition of work in the building and construction industry is the combining of materials and constituent parts on the building site to form, make or build a structure or to alter or repair a building or structure," and that "Midtown's employees added cable, material and parts to the building or structure enabling the resident of such structure to receive cable, television, wi-fi and security services." Obj. ¶ 8. Dycom contends that these

5

factual findings are inconsistent with the Report's conclusion that "Midtown's employees combining these parts and materials at the site of the building or structure to allow residents to receive such services did not alter the building or structure." *Id.*

As a review of the Report reflects, contrary to Dycom's objection, the Report's *de novo* conclusion—that the Construction Exemption is inapplicable to Midtown's work—is internally consistent and supported by legal authority.

The Report spends considerable attention on the meaning of "building and construction industry" as it relates to ERISA, reviewing several on-point National Labor Relations Board ("NLRB") decisions construing that term. As the Report explains, it does so heeding *both* parties' arguments that the term "should be given the same meaning as has developed in the context of the Taft-Hartley Act." Report at 7 (citing, *inter alia*, both parties' briefs). The NLRB decisions define the "ambit of work performed in the 'building and construction' industry." *Id.* at 10. In particular, *Painters, Loc. 1247 (Indio Paint & Rug Ctr.)*, 156 NLRB 951, 1966 WL 18139 (1966), on which both parties rely, defines the work in that industry as "subsum[ing] the provision of labor whereby materials and constituent parts may be combined on the building site to form, make or build a structure," *id.* at *12 (emphasis omitted). There is no error in the Report's extraction of this definition from the case.

The Report then relies on the factual findings of the arbitrator, which are "rebuttable only by a clear preponderance of the evidence," 29 U.S.C. § 1401(c); *see also Nat'l Ret. Fund on Behalf of Legacy Plan*, 946 F.3d at 149 (citing 29 U.S.C. § 1401(c)), and to which neither party specifically objects. It notes that the arbitrator determined, on the record before him, that "Midtown almost never worked on new construction projects. It mostly provided cable service for homes or apartment houses that were prewired for that service. Midtown's case would have

undoubtedly been stronger had its employees worked on new construction. . . . None of these employees had, or were required to have, a license to perform their work. Midtown did not have to obtain any permits for its employees' work to be performed." Report at 6–7 (quoting Award at 28–29). The Report sums up this work as "drilling holes and running cable through existing buildings or structures, and then using material and parts to hook up the cable to the necessary equipment in order to provide cable, television, Wi-Fi and home security services." *Id.* at 10. These factual findings, in turn, have a solid anchor in the evidence before the arbitrator.

To yield the purported internal contradiction that it then attacks, Dycom mischaracterizes the Report. It does so by inserting self-serving language—that "Midtown's employees *added cable, material and parts to the building or structure*." Obj. ¶ 8. That language, were it in the Report, might assist Dycom, insofar as it more closely tracks the definition from the NLRB decisions. But the Report does not use those words or draw that conclusion—that Midtown's employees were adding material in some fundamental way to buildings and structures. Rather, the Report (again, relying on the Award's factual findings), states that Midtown's employees "did not combine materials and constituent parts on the building site to form, make or build a structure." Report at 10 (internal quotation omitted). That finding is not "inconsistent" with the Report's decisive determination that, as a matter of law, the Construction Exemption does not apply to Midtown. Thus, upon *de novo* review here, the Court concludes that the arbitrator identified the relevant law, parsed it thoughtfully, and endeavored to and did apply it with care—and correctly.

***Second***, Dycom objects that the Report "fails to address the fact that an electrician does the same work as a cable installer, except with electrical wiring instead of telecommunications cable, yet electrical contractors are treated by the Fund as performing work in the building and

7

construction industry and cable contractors are treated by the Fund as not performing work in the building and construction industry." Obj. ¶ 9. Dyson argues that this is unfair, because "[u]nder the [a]rbitrator's determination and the findings in the Report," "an electrical contractor with the identical contribution history to Midtown, who ceased contributions to the Fund at the same exact time as Midtown, would owe no withdrawal liability to the Fund, while the Fund claims that Midtown owes $13 million of withdrawal liability." Id. ¶ 10.

Dycom does not support this argument with any apposite legal authority. Whatever the merits of Dycom's critique might be as a matter of policy or equity, Dycom does not any identify any legal infirmity in the arbitrator's finding that the exemption did not apply—a finding which, as noted, has factual support. And Dycom's related argument that Congress did not "intend" the Construction Exemption, see Dkt. 37 at 9, to be applied in the manner here does not cite any legal authority for this proposition. It does not cite supportive case authority, nor does it explain why tools of statutory construction, used to reveal congressional intent, ineluctably preclude the analysis in the Award. With this objection unavailing, the Court, having conducted *de novo* review of the Award's legal analysis, upholds the Award as legally and factually sound, as the Report found.

The Court, accordingly, denies Dycom's motion to vacate and grants the Fund's motion to confirm.

## CONCLUSION

For the foregoing reasons, the Court accepts and adopts Judge Aaron's December 27, 2022 Report and Recommendation in its entirety and confirms the Award.

The Court respectfully directs the Clerk of the Court to terminate all pending motions and to close the case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 24, 2023
       New York, New York